FILED

June 7, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 1:27 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| KELLISE VANDIVER, | ) | Docket No. 2017-08-0042 |
| **Employee,** | ) | |
| v. | ) | |
| UNILEVER MANUFACTURING, INC., | ) | State File No. 72740-2016 |
| **Employer,** | ) | |
| And | ) | |
| INSURANCE COMPANY OF THE | ) | Judge Amber E. Luttrell |
| STATE OF PENNSYLVANIA, | ) | |
| **Insurance Carrier.** | ) | |

## EXPEDITED HEARING ORDER
## DENYING REQUESTED BENEFITS

This matter came before the undersigned Workers' Compensation Judge on May 18, 2017, upon the Request for Expedited Hearing filed by Kellise Vandiver. The present focus of this case is whether Ms. Vandiver is entitled to medical and temporary disability benefits for her alleged right shoulder injury. The central legal issue is whether she is likely to establish at a hearing on the merits that she suffered an injury arising primarily out of and in the course and scope of her employment. For the reasons set forth below, the Court holds Ms. Vandiver did not meet her burden and thus is not entitled to the requested benefits at this time.

### History of Claim

The hearing testimony and exhibits established the following facts. Ms. Vandiver worked for Unilever Manufacturing beginning on May 23, 2016, as a line technician on two different lines. She worked as a wrapper operator on "gram 3" loading rolls of ice cream wrapper paper onto a machine, and on the carton loader machine loading stacks of cardboard packaging.[1] Ms. Vandiver alleged an injury to her right shoulder beginning on July 28, 2016, while working on the carton loader machine. She testified her machine

---

[1] The parties referred to the machine in question as gram 3 or line 3. Ms. Fuller testified gram 3 stands for the manufacturer of the technology that makes the popsicles.

1

was difficult to operate that day causing soreness in her right shoulder. Specifically, she stated a lever was difficult to pull, resulting in pain. She reported the problem with the machine to her supervisors, Major Walker and Rodney Ford. Mr. Walker attempted to pull the lever on the machine, acknowledged it was difficult to pull back, and advised he would report the issue to maintenance. He filled out a Unilever Near Miss Notification and referred Ms. Vandiver to the onsite nurse for ice and ibuprofen.

Ms. Vandiver continued working on the same machines with difficulty until September 11, when she "felt like someone had taken a knife and cut my right shoulder." The next day, Ms. Vandiver sought emergency treatment at Lauderdale County Hospital. The physician diagnosed a shoulder strain and took Ms. Vandiver off work for three days.

Following this second incident, Unilever prepared a First Report of Injury noting the date of injury as July 28, 2016, and sent Ms. Vandiver to Fast Pace Urgent Care for initial treatment. Ms. Vandiver provided a history of pulling a bar on a machine at work that caused pain and soreness in her shoulder over the last month. She also described the sharp pain she experienced on September 11. The provider referred her for an orthopedic evaluation and MRI of the shoulder. Unilever subsequently offered a panel of physicians, from which Ms. Vandiver selected Dr. Riley Jones, an orthopedist, for treatment.

Ms. Vandiver saw Dr. Jones and associated her shoulder pain with her lifting, pulling, pushing, and reaching work duties. Dr. Jones diagnosed biceps tendinitis, injected her shoulder, and ordered PT. He subsequently ordered an MRI, which indicated mild supraspinatus tendinosis and moderate acromioclavicular arthrosis with a small subacromial spur. Based on review of the MRI, Dr. Jones concluded, "the injury was not caused by the course of employment." Dr. Jones noted the MRI report indicated an interstitial tear involving the anterior tendon insertion but no full thickness rotator cuff tear. He further noted a small subacromial spur. Dr. Jones explained,

> Pt is coming in today and questioning me about why I did not think this was caused by work. I have gone over with her discussion of the new law. The patient has not had a specific injury and upon questioning she really does not do any overhead work. In reviewing all of this, it appears that this is primarily a degenerative type of tear and not related to any specific injury or job duty. Therefore, I do not think she meets the 51% being caused by her work. I told her she can get treatment from another orthopedic surgeon on her private insurance.

Following Dr. Jones' opinion, Unilever denied Ms. Vandiver's claim, and Ms. Vandiver sought additional treatment from Dr. Tim Sweo at Sports Orthopedic and Spine.

During Ms. Vandiver's treatment with Dr. Sweo, he ordered an EMG of the right

2

upper extremity to determine if her pain was radicular in nature. The EMG study revealed moderate carpal tunnel syndrome. Dr. Sweo also diagnosed a partial rotator cuff tear in the right shoulder based on the MRI and ordered surgery for both conditions. Regarding causation, Dr. Sweo stated,

> Ms. Vandiver developed right shoulder pain with weakness and some arm numbness last year. Unfortunately, I don't know if she had an injury or not or if it was cumulative. MRI exam does show partial RC tear. And most of her symptoms I believe are attributable to that. And is likely work-related. A nerve conduction study also showed carpal tunnel syndrome on the right side. And I cannot make a determination whether that is likely work-related unless she had no symptoms at all in that UE prior to that then most likely it would be.

Ms. Vandiver last saw Dr. Sweo in April 2017, at which time he still recommended surgery for her right shoulder and right wrist. Dr. Sweo noted that Ms. Vandiver advised that she needed to wait a few more months before undergoing surgery.

In addition to the incidents she described when her shoulder pain began, Ms. Vandiver testified to problems she had with the two machines. She stated she was required to lift rolls of wrapper paper weighing twenty-two pounds as high as eye level on the wrapper machine. On the carton loader machine, Ms. Vandiver was required to lift her arm as high as her head to pull back the lever. During cross-examination, Unilever showed Ms. Vandiver videos of each job she performed to dispute her testimony regarding how high she reached to operate the machines. Ms. Vandiver confirmed the videos accurately portrayed the wrapper operator and carton loader job duties. Regarding the wrapper operator position, Ms. Vandiver acknowledged the video showed the operator lifting the roll to waist or chest level instead of eye level.

Unilever's human resources representative, Bernadette Fuller, testified the videos showed the exact machines Ms. Vandiver worked on at the time of her alleged injury. She further testified the video of the carton loader job showed the operator reach just below eye level to pull the lever.

At the hearing, Ms. Vandiver testified she still needs surgery and asserted she never had problems with her shoulder before her work-injury. Unilever countered that Ms. Vandiver is not entitled to further benefits based upon Dr. Jones' opinion her condition was degenerative in nature and not related to any specific injury or job duty. Unilever further contended the law is unsettled regarding compensability for aggravation of pre-existing conditions.

3

**Findings of Fact and Conclusions of Law**

To prove a compensable injury, Ms. Vandiver must show her alleged injury arose primarily out of and in the course and scope of her employment and that it was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence. Further, she must show, "to a reasonable degree of medical certainty that [her alleged work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." To prove a compensable aggravation of a pre-existing condition, she must show to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(14) (2016).

However, because this case is in a posture of an Expedited Hearing, Ms. Vandiver need not prove every element of her claim by a preponderance of the evidence in order to obtain relief. Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015); Tenn. Code Ann. § 50-6-239(d)(1).

*Analysis*

The Court first notes that Unilever presented no testimony or proof disputing Ms. Vandiver's description of the events on July 28 or September 11, 2016, or her symptoms that developed as a result of her work activities. Unilever disputed generally Ms. Vandiver's description of reaching to her head level to pull the lever and reaching to eye level to load the wrapper paper; however, the Court finds Ms. Vandiver associated the onset of her symptoms on July 28 with the difficulty of pulling the lever on the carton loader machine and not with the height of the lever.

There appears to be no dispute that Ms. Vandiver timely reported her symptoms following both incidents on July 28 and September 11, and Unilever ultimately prepared a First Report of Injury and provided Ms. Vandiver a panel of physicians. The Court finds Ms. Vandiver credible in her testimony regarding the symptoms she suffered in her right shoulder and thus holds she came forward with sufficient evidence to establish an incident, or specific set of incidents, identifiable by time and place of occurrence as required by Tennessee Code Annotated section 50-6-102(14)(A). The question to be resolved is whether she appears likely to prove the incident or set of incidents is the primary cause of her condition and need for medical treatment. Applying the foregoing principles to the facts of this case, the Court cannot find at this time that Ms. Vandiver is likely to meet this burden.

The medical proof before the Court addressing medical causation for Ms. Vandiver's shoulder injury came from Dr. Jones and Dr. Sweo. Dr. Jones, the panel-

4

selected treating physician, concluded Ms. Vandiver has a degenerative tear unrelated to any specific injury or job duty. He stated, "therefore, I do not think she meets the 51% being caused by her work." Dr. Sweo stated in his record, "Unfortunately, I don't know if she had an injury or not or if it was cumulative. MRI exam does show a partial RC tear. And most of her symptoms are attributable to that. And is likely work-related."

Dr. Jones' causation opinion is afforded a presumption of correctness that is rebuttable only by a preponderance of the evidence. Tenn. Code. Ann. § 50-6-102(14) (2016). Based on the opinions expressed in his note, Dr. Jones concluded Ms. Vandiver's shoulder condition did not arise primarily out of her employment at Unilever. While Dr. Sweo indicated Ms. Vandiver's shoulder condition was "likely work-related," this does not address the current legal standard for causation. The mere fact that Ms. Vandiver's shoulder condition might be work-related to some unspecified degree is insufficient for the Court to find Ms. Vandiver's injuries constituted more than fifty-percent of the cause of her disability or need for medical treatment considering all causes. Thus, the Court finds, at this time, that Dr. Sweo's medical opinion that Ms. Vandiver's tear is "likely work-related" is insufficient to rebut the presumption of correctness afforded Dr. Jones' opinion.

In so finding, the Court notes, contrary to Unilever's contentions at the hearing, that the law is indeed settled that aggravations of pre-existing conditions can be compensable work injuries. The Workers' Compensation Appeals Board has held that Tennessee Code Annotated 50-6-102(14):

> [M]akes clear that an aggravation of a preexisting condition is a compensable injury when "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Thus, an employee can satisfy the burden of proving a compensable aggravation if: (1) there is expert medical proof that the work accident "contributed more than fifty (50%)' in causing the aggravation," and (2) the work accident was the cause of the aggravation "more likely than not considering all causes."

*Miller v. Lowe's Home Centers, Inc.* 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *12, (Oct. 21, 2015).

Here, to the extent Ms. Vandiver claims such an aggravation, the Court finds neither physician specifically addressed whether Ms. Vandiver suffered an aggravation of a pre-existing condition arising primarily out of and in the course and scope of her employment.

Therefore, as a matter of law, Ms. Vandiver has not come forward with sufficient evidence from which this Court concludes that she is likely to prevail at a hearing on the

5

merits. Her request for medical and temporary disability benefits is denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Vandiver's claim against Unilever Manufacturing, Inc., and its workers' compensation carrier for the requested medical benefits and temporary disability benefits is denied at this time.

2. **This matter is set for a Status Hearing on July 24, 2017, at 9:00 a.m. Central Time.**

**ENTERED** this the ___7th___ day of June, 2017.

**Judge Amber E. Luttrell**
**Court of Workers' Compensation Claims**

6

**APPENDIX**

Exhibits:
1. Affidavit
2. First Report of Work Injury
3. Employee's Choice of Physician
4. Notice of Denial
5. Employee's Statement
6. Near Miss Notification
7. Mileage Reimbursement Requests
8. Wage Statement
9. Medical Records (collective exhibit)
10. Dr. Riley Jones' medical records (collective)
11. Sports Orthopedic and Spine work restriction form
12. Video clip of Ms. Vandiver's job duties (flash drive)

Technical record:[2]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Trial Brief
5. Employer's Pre Compensation Hearing Statement
6. Employer's Amended List of Witnesses
7. Employer's Exhibit List

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the ___7th___ day of June, 2017.

| Name | First Class Mail | Via Email | Service sent to: |
|---|---|---|---|
| Kellise Vandiver, Self-represented Employee | X | X | vandiverkellise@yahoo.com 160 Spring Hill Rd., Ripley, TN  38063 |
| Sean Hunt., Esq., Attorney for Employer | | X | sean@thehuntfirm.com |

_Penny Shrum_

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**

8